GABRIEL FUENTES, JR., Plaintiff and Appellee, *v.* JOHN DOE ET AL., Defendants and Appellants.

No. 12102. Decided February 14, 1962.

*Luis Vizcarrondo Coronado* and *Romany & Romany* for appellants. *Jorge Sous* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Alejo Cortés, Ramón Figueroa, and Jenaro Reyes González purchased five sixtieths of a ticket of the Lottery of

Puerto Rico which won the first prize in the drawing held on March 25, 1956. Gabriel Fuentes, Jr., plaintiff-appellee herein, alleges that he is the owner of the said shares having purchased them from a lottery agent, and brought this action to recover the said sixtieth parts.

The case was submitted on a stipulation which we copy below in its pertinent part:

"1. That on March 24, 1956, at noontime, plaintiff Gabriel Fuentes, Jr., purchased from Ana María Valdés Tous the whole ticket No. 31,345 corresponding to the regular drawing No. 874 of the Lottery of Puerto Rico to be held in the morning of the following Sunday, March 25, 1956; that he gave Mr. Ramos sixtieths Nos. 39 and 40 and kept the remaining 58 sixtieths; that he afterwards went to the pier to inspect his boat, and upon his return at 6:00 p.m. he discovered that he had lost the said 58 pieces; that the ticket in question was the winner of the first prize in the drawing held the next day.

"2. That on March 24, 1956, around 8:30 p.m., defendants Alejo Cortés, Ramón Figueroa, and Jenaro Reyes González acquired by purchase from Martín Rondón five sixtieths of the said ticket No. 31,345, as follows:

"Alejo Cortés purchased two sixtieths; Ramón Figueroa purchased two other sixtieths; and Jenaro Reyes González purchased another sixtieth, for the price of twenty-five cents per sixtieth; that the defendants acquired the said sixtieths in good faith and for their nominal value without being aware at all that plaintiff Gabriel Fuentes, Jr. had lost the said lottery ticket and believing in good faith that Martín Rondón was the owner of those sixtieths and that he had the right to sell them; that Martín Rondón is regularly engaged in car washing."

Thus, the question before the trial judge was the determination, as a matter of law, whether a person who has purchased a lottery ticket and loses it may recover it from the person who acquired it upon payment of the corresponding price. The trial court sustained the complaint and appeal was taken therefrom to this Court.

On a previous occasion, *In re Mieres Calimano, Pros. Atty. and Pagán*, 76 P.R.R. 656 (1954), we held that the purchaser of a lost lottery ticket could recover it from the finder. This case presents the question whether he may recover it from the person who acquired it by purchase.

The appellants-defendants in this action maintain that although the *Mieres* case held that a lost lottery ticket could be recovered from the finder, recovery does not lie against the person who acquired it by payment of the price. They base their contention on the fact that lottery tickets are securities to the bearer.

In *Mieres* we said that "We must therefore resort to the provisions of that Code [Civil] in order to settle the conflict involved in this proceeding." We will resort to that Code in order to decide the conflict in this case.

Section 393 of the Civil Code—31 L.P.R.A. § 1479— provides:

"The possession of personal property acquired in good faith, is equivalent to a title thereto. Nevertheless, any person who has lost any movable or has been illegally deprived thereof, may recover it from the person in possession of the same.

"If the possessor of a movable lost or stolen has acquired the same in good faith at a public sale, the owner cannot obtain the restitution thereof without reimbursing the price paid therefor.

"With regard to things acquired on the exchanges, or at fairs or markets, or from a lawfully established merchant habitually occupied in dealing with objects of the kind, the provisions of the Code of Commerce, Title 10, shall be observed."

In *García et al.* v. *Savino et al.*, 19 P.R.R. 265 (1913), we held that the possession of personal property acquired in good faith is equivalent to title thereto, but not to ownership thereof in case the vendor is not the real owner; and that in order to acquire ownership in such a case continued possession for a period of three years is necessary.

In Vol. 2 of his *Derecho Civil Español, Común y Foral* (6th ed. 1943), Castán says at p. 52: "In conclusion, and according to this criterion, which seems to be the most reasonable, the possession, even if it is acquired in good faith, of *lost* or *stolen* personal property, does not bar the action for recovery and, consequently, does not extinguish the right to property." (Italics in the original.)

In Vol. 32 of *Principios de Derecho Civil Francés*, Laurent says at p. 653 in his commentaries on § 2279 of the French Code, which is considered as the counterpart of our § 393: "Is recovery admissible against the possessors in good faith? Yes, and without any doubt. Section 2279 makes no distinction and there was no need to distinguish; if the law permits the recovery of lost or stolen things, it is out of respect to the right to property. It should therefore permit the recovery merely because the thing is stolen or lost. Section 2280 confirms this interpretation; it presupposes that the third possessor is in good faith by reason of the circumstances surrounding the purchase of the thing, even if he has purchased it at a public sale or from a dealer who sells similar things, he can not oppose his good faith to the owner's action, except that the latter can not recover in this case without reimbursing to the possessor the price paid by the latter."

To the same effect, see 4 Manresa, *Comentarios al Código Civil* 301 (5th ed. 1931); 3 Sánchez Román, *Derecho Civil Español, Común y Foral* 462 et seq. (2d ed. 1900); 3 Planiol-Ripert, *Tratado de Derecho Civil Francés* 317 et seq. (1942); 2-2 Colin y Capitant, *Curso Elemental de Derecho Civil* 963 (2d ed. 1942); 1 De Buen-Bonet, *Derecho Civil Común* 234; De Diego, *Instituciones de Derecho Civil Español* 385 (1941); 1 *Diccionario de Derecho Privado* 3-4 (1954 ed.); 2 Borrell y Soler, *Derecho Civil Español* 206, § 147 (1955 ed.); Machado, *Comentarios al Código Civil* 248 (1950); Judgment of the Supreme Court of Spain of January 13, 1926 (169 *Juris. Civ.* 151). Valverde, *Tratado de Derecho Civil Es-*

pañol 333, footnote 4 (1936) ; 1 Santamaría, *Comentarios al Código Civil* 492 *et seq.* (1958) ; 3 Núñez, *Código Civil* 417–22 (Havana 1935) ; 1 Arango, *El Código Civil* 194 (Havana 1926) ; Hernández-Gil, *El Giro de la Doctrina Española en Torno al Artículo 464*, 28 *Revista de Derecho Privado* 491 (1944) ; Hernández-Gil, *De Nuevo sobre el Artículo 464 del Código Civil*, 29 *Revista de Derecho Privado* 413 (1945).

 We therefore see that § 393, as construed by the commentators, and according to the case of *García* v. *Savino*, provides that the owner of lost or stolen personal property has the right to recover it without it being necessary to consider the good or bad faith of the acquirer. Even though the third acquirer obtains possession in good faith, the real owner is not precluded from bringing the corresponding action for recovery. The good faith only has the effect of reducing to three years the time necessary to acquire by prescription. In treating this question, Manresa maintains that in cases involving lost or misplaced personal property three different limitation periods come into play within which the real owner may recover the thing lost or misplaced. If the person who finds the lost thing complies with the requirements of § 555 by delivering the personal property to the mayor, and if no claim is made after the lapse of two years from the delivery, then the person who delivered it becomes the absolute owner of the thing. If the afore-mentioned formalities are not observed, the owner has six years to bring the action pursuant to § 1855 of the Civil Code, and if the thing passes to a third party in good faith, then the limitation period is reduced to three years pursuant to the provisions of that section. See 4 Manresa, *op. cit.* at 303–04, commenting the corresponding sections of the Spanish Code. Sols, *Prescripción Adquisitiva de Bienes Muebles*, 34 *Rev. Der. Privado* 119 (1950).

 It has been explained that the use of the word title in the provision of § 393 to the effect that "the possession of

personal property acquired in good faith is equivalent to a title thereto," means title for the purposes of prescription and not title to property. 11 Scaevola, *Comentarios al Código Civil* 588 *et seq.*; 2 Colin y Capitant, *Curso Elemental de Derecho Civil* 1008 (2d ed. 1942) ; 3 Puig Brutau, *Fundamentos de Derecho Civil* 99 (1953) ; 4 Manresa, *op. cit.* at 299; De Buen-Bonet, *op. cit.* at 234. And even those who maintain that the word title used in § 393 means title to property recognize the exception made in the second provision of the first paragraph of that section, which authorizes the recovery in the event of loss and illegal deprivation. In other words, in these assumptions they do not admit the immediate prescription. Hernández-Gil, *El Giro de la Doctrina Española en Torno al Artículo 464*, 28 Rev. Der. Privado 491 (1944).

██ Hence, the possessor in good faith does not become the owner until three years have elapsed after acquiring possession of the personal property. And we have already held that lottery tickets are considered personal property. To that end, we said in *Mieres*, footnote 4, at p. 661:

"We entertain no doubt that lottery tickets are personal property. Commenting on § 615 of the Spanish Civil Code, which is equivalent to § 555 of our Code, in vol. 5, 6th ed., p. 77, Manresa states as follows: 'The terms employed in § 615, first paragraph, cover by their generality all classes of persons and all kinds of personal property. We believe that the term *thing* should be deemed synonymous with property. Personal property is all property not comprised within § 334 of the Code [equivalent to § 263 of our Code] and, hence, movables.' Section 263 of our Code defines immovables by specific enumeration without including the property herein involved."

In the same connection, see 11 Scaevola, *op. cit.* at 395 *et seq.*

We turn now to consider the question raised by the appellants to the effect that lottery tickets are securities to the bearer, and in that connection the regulations promulgated by the Secretary of the Treasury provide that "the lottery

tickets shall be considered as securities payable to the bearer, and therefore no person other than the one possessing and presenting the ticket for collection shall be considered as the owner thereof." 15 R.&R.P.R. § 126–24.

 In *Mieres* we settled this question in stating:

"Appellant argues that the instant case is governed by the special law creating the Official Lottery known as 'Puerto Rico Lottery,' and not by the provisions of Book Three of the Civil Code, particularly § § 555 *et seq.* (1930 ed.), which deal with the finding of personal property. He further argues that the appellee lost possession of the winning ticket, if she ever held such possession, through negligence.

"He is not right. The Official Lottery Act provides in § 12 that 'No prize shall be paid without the previous presentation of the ticket winning it and the verification of its legitimacy.' The Lottery Regulations contain a similar provision and further provide that lottery tickets 'shall be considered as bearer securities; therefore, no person other than the one in possession thereof who presents the same for collection shall be deemed to be the owner of a winning ticket.' Rule II-A, par. 4. 'The Bureau of the Lottery'—says Rule VII, par. 9—'the internal-revenue offices of the municipalities of the Island, and the agents shall not consider as owner of a ticket a person other than the one holding the possession thereof who presents the same for collection.' Furthermore, on the back of the lottery tickets the following is printed: 'Since the tickets are payable to the Bearer, the prizes will be paid to the person presenting same for collection. The prizes expire at the end of six (6) months.' Relying on these provisions of the Act and its Regulations, appellant contends that since he held possession of the winning ticket, he presented it for collection, was paid, his title as owner of the prize was definitively established and cannot be contested by any person.

"Appellant is not correct. The Act creating the Lottery regulates the juridical relations between ticket purchasers and the Government. For the purposes of prize payment, the holder of the ticket presenting it for collection shall be deemed to be the only owner. This does not imply, however, that the

payment of the prize to the holder or bearer of a winning ticket is a definite, absolute and unassailable adjudication of the ownership right to such prize, to the prejudice of a third party. It is so for the Bureau of the Lottery. However, a third person claiming to be the legitimate owner of the prize, or to have some participation in it, is not precluded from making a claim in court. The Lottery Act did not purport to repeal, nor has it actually repealed, expressly or impliedly, the provisions of the Civil Code dealing with property rights. We must therefore resort to the provisions of that Code in order to settle the conflict involved in this proceeding."

Scaevola discusses the problem of the finding of a lottery ticket in his commentaries on § § 615 and 616 of the Spanish Civil Code, counterpart of § § 555 and 556 of our Code, and the role played by the fact that in Spain, as in Puerto Rico, they are considered as security to the bearer. In this connection, he says that "the fact that the lottery ticket is a security to the bearer is not sufficient to wipe out the irregularities of a vicious acquisitive fashion." 11 Scaevola, *op. cit.* at 439. It could be argued that the provision considered by Scaevola in his commentaries provides that "the lottery tickets are securities to the bearer, wherefore only the person presenting them shall be considered as the owner thereof, without prejudice to the right of a third party the adjudication of which is for the ordinary courts," while the provision of our regulations makes no reservation as to such determination by the courts. In view of what we said at the outset in this opinion in discussing the scope of § 393 of the Civil Code, we believe that it was unnecessary to include that exception in the regulations. Such is the law, and obviously it was not necessary to make any reference to that matter in the regulations.

The appellants raise one last question: the negotiability of lottery tickets. They argue that the provisions of the Negotiable Instruments Act (Act No. 17 of April 22,

1930, Sess. Laws, p. 172, 19 L.P.R.A. § 1), are applicable to the problem under consideration, since the last paragraph of § 393 provides that "with regard to things acquired on the exchanges, or at fairs or markets, or from a lawfully established merchant habitually occupied in dealing with objects of the kind, the provisions of the Code of Commerce, Title 10, shall be observed," and since the provisions of the Code of Commerce were substituted by the Negotiable Instruments Act, the latter is the applicable law. We believe this interpretation is not correct. Apart from the fact that the appellants did not acquire the sixtieth parts in such a way as to come within the provisions of the last paragraph of § 393, the fact that the sections of the Code of Commerce were substituted by the Negotiable Instruments Act does not render the latter applicable, as sought by the appellants, to the facts of this case and much less to have the effect of converting the lottery tickets into negotiable instruments. Evidently, a lottery ticket does not meet the requirements which must be present in order to consider it as a negotiable instrument. See Negotiable Instruments Act, 19 L.P.R.A. § 2; Britton, Bills and Notes 50, § 12 (1943).

The judgment appealed from will be affirmed.